IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY DORTCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4320 |
| | § | |
| BOXER PROPERTY MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] are Defendant's motion for summary judgment (Docket Entry No. 23) and Plaintiff's motion for summary judgment (Docket Entry No. 25). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

### I.  Case Background

The instant case involves claims of employment discrimination. Plaintiff Jerry Dortch ("Plaintiff") initiated this action against Defendant Boxer Property Management Corporation ("Defendant" or "Boxer"), his former employer, under the Americans with Disabilities Act[2] ("ADA") and the Family Medical Leave Act[3]

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket entry No. 12.

[2]    42 U.S.C. §§ 12101-13.

[3]    29 U.S.C. §§ 2601-54.

("FMLA").[4]  Plaintiff claims that Defendant discriminated against him based on a perceived disability in violation of the ADA, that Defendant unlawfully retaliated against him for requesting accommodations under the ADA, and that Defendant retaliated against him for asserting his rights to medical leave under the FMLA.

Plaintiff and Defendant generally agree on the sequence of events surrounding Plaintiff's termination; however, the parties disagree over the rationale behind, and substance of, conversations that led to that termination.

Plaintiff, a fifty-two year old male, worked for Defendant as a director of maintenance and construction for approximately three and a half years.[5]  During that time, he was tasked with structuring and supervising Defendant's maintenance, construction, and HVAC (heating, ventilating, and air-conditioning) departments.[6]

In May 2003, after notifying Andrew Segal ("Segal"), Defendant's owner and president, Plaintiff fired Larry Lyda ("Lyda"), an employee under Plaintiff's supervision.[7]  Subsequent to his termination, Lyda contacted Segal and informed him that

---

[4]    Plaintiff's Amended Original Complaint, Docket Entry No. 21, p. 1.

[5]    Id. at 3.; see also Defendant's Answer to Plaintiff's Amended Original Complaint, Docket Entry No. 22, p. 2.

[6]    Index of Exhibits to Defendant's Motion for Summary Judgement, Docket Entry No. 24, Exhibit ("Ex.") B, Excerpts from Plaintiff's Deposition, pp. 16-19, 24.

[7]    Id. at 26-27; see also id. at Ex. C, Excerpts from Segal's Deposition p. 14.; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, pp. 12-14.

Plaintiff was running a side business (named "Lanta"), and that Plaintiff had tried to hire Lyda for that business.[8]

Following the discussion with Lyda, Segal and John Rentz ("Rentz"), Defendant's vice president and general counsel, contacted Plaintiff regarding Lanta.[9] Segal and Rentz testified that Plaintiff informed them that he had run a few advertisements to install residential lifts in The Woodlands, Texas, area, but because of a lack of response, he was going to close the business.[10] Segal testified that Plaintiff stated he was not using Defendant's business time or materials for Lanta.[11] Segal also stated that he informed Plaintiff that, although he could operate the business after hours, he could "not use any of the company assets or . . . run the business on company time," nor could he "receive correspondence or send correspondence over the e-mail, cell phone or phone system" regarding his side business.[12] Rentz testified Plaintiff was warned that "engaging in a side business during business hours, using company property, resources, vendors or

---

[8]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, p. 15; see also id. at Deposition of Rentz, p. 25; Defendant's Motion for Summary Judgement, Docket Entry No. 24, Exhibit B, Excerpts from Plaintiff's Deposition, p. 57.

[9]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Rentz, pp. 4, 24-25.

[10]   Id. at Deposition of Segal, pp. 17; see also id. at Deposition of Rentz, p. 24.

[11]   Id. at Deposition of Segal, p. 17.

[12]   Id. at Deposition of Segal, pp. 17-18.

employees would be a serious offense and could lead to termination."[13]

There is no evidence that this May 2003 discussion and directive were memorialized in writing, but Plaintiff acknowledged meeting with Rentz and Segal and testified that, at that meeting, he requested that Rentz and Segal let him know if his side business ever impacted his job performance.[14]  Plaintiff also stated that he understood that it would be a problem if he were to work on Lanta during Defendant's business hours, and later noted, "I do understand that [working on other things while I was at Boxer] would be legitimate grounds for dismissal if it were proven."[15]

Defendant's discipline procedures included both verbal and written warnings, but Plaintiff was never formally disciplined at any time prior to his termination.[16]  The employee handbook contained no specific clause on "moonlighting" or soliciting employees for side businesses.[17]

_____

[13]     Id. at Deposition of Rentz, pp. 25-26.

[14]     Id. at Deposition of Rentz, P. 26; Index of Exhibits to Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 81-82.

[15]     Index of Exhibits to Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 81-82, 156.

[16]     Id. at Deposition of Rentz, pp. 27-28; Plaintiff's Surreresponse [sic] to Defendant's Motion for Summary Judgment, Docket Entry No. 30, Ex. 1.

[17]     Id. at Deposition of Rentz, p. 33.  The employee handbook was updated in December 2003, the month Plaintiff was terminated.  Id. at Deposition of Rentz, p. 30.  It is unclear if there was a "moonlighting" clause in the previous version of the employee handbook.  Id. at 34.  Plaintiff had signed a "acknowledgment of receipt of the handbook in April 2000.  Id. at 29.  However, there is no acknowledgment for receipt of the updated December 2003 version.  Id.

On December 20, 2003, Plaintiff visited Rahim Haikal, M.D., ("Dr. Haikal") and reported experiencing "pain in [his] lower abdomen," "frequent and burning urination," dizziness, and fatigue.[18]  Dr. Haikal diagnosed Plaintiff as having "blood in the urine" and a "possible UTI [urinary tract infection]."[19]  Under the "follow-up" section of Plaintiff's chart, Dr. Haikal wrote "see PCP [primary care physician] in one week" but offered no written advice regarding Plaintiff's fitness for work.[20]

Plaintiff testified that during the visit, Dr. Haikal "agreed that a break [from work] would be a good thing," but Plaintiff was never given specific instruction to take off work, and the decision to take time off of work was Plaintiff's own.[21]  Plaintiff also testified that no symptoms manifested prior to the morning of December 20, 2003, and that almost none reoccurred following the visit.  The only ailment that continued (burning during urination), stopped after seven days of antibiotic use as prescribed by Dr.

---

at 30-31.

[18]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Exhibit G, p. 2.

[19]     Id.

[20]     Id.

[21]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 130-131.  Plaintiff's affidavit states he was requesting, pursuant to his doctor's visit and at his doctor's instructions, accommodations in the form of a couple of weeks off from work. Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, Affidavit of Plaintiff, ¶ 3.

Haikal.[22]  Plaintiff stated that he did not see Dr. Haikal or his primary care physician again after that initial visit.[23]

A few hours after Plaintiff saw Dr. Haikal, Plaintiff sent an e-mail to Segal with the subject "Paid Time Off - Medical."[24]  The e-mail stated that "the last several weeks of work-related issue[s] have taken a toll on my health" and "my blood pressure and pulse have ramped up, I am having dizzy sensations, and I have blood in my urine!"[25]  Plaintiff also wrote, "I plan to take the next couple of weeks or so off to address these things.  I will line out my staff Monday morning via phone" and "I will periodically check e-mail, and will have my cell phone."[26]  The e-mail ended with "Happy Holidays!"[27]  Plaintiff later admitted that when he requested the time off on December 20, 2003, he "could have worked."[28]  Plaintiff also stated in his deposition that he "never claimed any

---

[22]    Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 119-124.

[23]    Id. at Ex. B, Excerpts from Plaintiff's Deposition, p. 128.  Though Plaintiff testified that he did not have "the financial wherewithal" to see a doctor after his termination, Plaintiff's personnel file indicates that he made three COBRA payments (from a Lanta account) that provided him with "Buy Up PPO" medical insurance coverage through at least March 23, 2004.  See id. at Ex. A, Excerpts from Plaintiff's Personnel File, pp. 4-8.

[24]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Ex. 1.

[25]    Id.

[26]    Id.

[27]    Id.

[28]    Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, p. 188.

6

disability."[29]

At 8:16 a.m. on Monday, December 22, 2003, Plaintiff forwarded his December 20th e-mail to four other employees and included some additional instructions regarding specific projects.[30]   He also stated, "I will keep my phone with me (and check emails) throughout this medical-related absence."[31]

Shortly after receiving Plaintiff's e-mail that same Monday, **Segal and Rentz telephoned Plaintiff.[32]**   Plaintiff testified that Segel and Rentz "thought initially that I wanted to take – when it said medical, they thought it was like a workman's comp type deal[, but] I explained to them it was just time off during the holidays, slow season."[33]   Plaintiff also testified that Segal and Rentz discussed termination, at which point he asked them if they were terminating him because he "asked for time off for medical reasons."[34]   Plaintiff testified there was a "long pause" after that question, and Segal and/or Rentz stated that they would get back to him.[35]

---

[29]    Id. at 156.

[30]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Ex. 2.

[31]    Id.

[32]    Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, p. 145

[33]    Id.

[34]    Id. at 146.

[35]    Id.

Segal testified that, following this telephone conversation, he accessed Plaintiff's e-mails because Segal was unsure when Plaintiff would return and needed the access to run the department in Plaintiff's absence.[36]   Rentz did not recall forwarding or checking Plaintiff's e-mail when Plaintiff was on vacation prior to this absence.[37]

Upon accessing Plaintiff's e-mail account, Segal found various e-mails pertaining to Lanta.[38]   Included in the e-mails were construction bids sent to Plaintiff and general correspondence to and from Plaintiff regarding quotes and pricing for projects associated with Lanta.[39]  Upon viewing some of these e-mails during his deposition, Plaintiff admitted that he had used Defendant's e-mail at least once to conduct his side business.[40]

On December 23, 2003, Defendant telephoned Plaintiff to terminate his employment.[41]  The employee termination form, signed by Segal and dated December 23, 2003, cites "misuse of company

---

[36]     Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, pp. 39-40.

[37]     Id. at Deposition of Rentz, p. 12.  Plaintiff states in an affidavit that, although he intended to check his e-mail during his absence, Defendant locked him out of computer access. Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, Affidavit of Plaintiff, ¶ 5.

[38]     Id. at Deposition of Segal, pp. 26, 55.

[39]     See Defendant's Motion for Summary Judgement Docket Entry No. 24, Ex. E.

[40]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Deposition of Plaintiff, p. 111.

[41]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, Affidavit of Plaintiff, ¶ 6.

time, violation of company e-mail policy, and misuse of company assets" as the bases for the termination.[42]  Plaintiff stated that Rentz and Segal informed him that he was fired for using "company equipment for personal reasons."[43]

Plaintiff notes that Segal admitted using Defendant's phones to make and receive phone calls regarding two other corporations that Segal owned.[44]  Segal testified that he did not know if he used Defendant's e-mail to discuss his other corporations, but Rentz admitted he had received personal e-mail on his business e-mail account.[45]  Segal testified that Defendant permitted employees to use company-provided vehicles for business and personal purposes.[46]

Plaintiff's case is properly before this court under federal question jurisdiction.  See 28 U.S.C. § 1331.  Defendant filed a motion for summary judgment on March 14, 2006, and Plaintiff similarly moved for summary judgment on March 17, 2006.[47]  The court now addresses these motions and all associated responses.

_____

[42]    Defendant's Motion for Summary Judgment, Docket Entry No. 24, Ex. A, p. 3; see also Docket Entry No. 26, Ex. 3, p. 2.

[43]    Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, Affidavit of Plaintiff, ¶ 6.

[44]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, pp. 6-7.

[45]    Id.; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Rentz, pp. 21-22.

[46]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, pp. 21-22.

[47]    See Defendant's Motion for Summary Judgment, Docket Entry No. 23; Plaintiff's Motion for Summary Judgment, Docket Entry No. 25.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine,
the dispute regarding a material fact must be supported by evidence
such that a reasonable jury could resolve the issue in favor of
either party.  Id. at 250.

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response
to a showing of lack of evidence, the party opposing summary
judgment must go beyond the pleadings and proffer evidence that
establishes each of the challenged elements of the case,

demonstrating that genuine issues of material fact do exist which must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III.  Analysis

#### A.  McDonnell Douglas Burden-shifting

ADA and FMLA discrimination and retaliation claims are properly analyzed under the modified McDonnell Douglas burden-shifting approach.  See Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 511 (5th Cir. 2003); Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995); Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  This approach places the initial burden on the plaintiff to establish a prima facie case of discrimination or retaliation.  Gowesky, 321 F.3d at 511.  Once the prima facie case is established, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action.  Id.  If the defendant satisfies this burden,

then the presumption of discrimination dissolves.  See Daigle, 70 F.3d at 396.

Once the plaintiff's presumption is extinguished, he must then offer evidence creating a "genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); see also Richardson, 434 F.3d at 327 (applying Rachid to an FMLA retaliation case because "Rachid is the law of this circuit, and, even though it addresses a different anti-discrimination statute, consistency requires that we endorse the mixed-motive framework" when applicable); McInnis v. Alamo Community College Dist., 207 F.3d 276, 279 (5th Cir. 2000)(applying McDonnell Douglas burden-shifting analysis to ADA claims).  In an instance of mixed motives, the defendant must then respond with evidence that the same employment decision would have been made regardless of discriminatory animus. Rachid, 376 F.3d at 312-13.

Importantly, though the intermediate evidentiary burdens shift back and forth under the McDonnell Douglas framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

times with the plaintiff." <u>Reeves v. Sanderson Plumbing Prods.,</u> <u>Inc.</u>, 530 U.S. 133, 142-143 (U.S. 2000).

**B.    <u>ADA Discrimination</u>**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); <u>see also</u> <u>Rodriquez v. ConAgra</u> <u>Grocery Prods. Co.</u>, 436 F.3d 468, 474 (5th Cir. 2006).

To establish a claim for unlawful discrimination under the ADA, a plaintiff:

> must first make a prima facie showing of discrimination by establishing that: (1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his [perceived] disability; and (4) he was replaced by or treated less favorably than non-disabled employees.

<u>Gowesky</u>, 321 F.3d at 511 (<u>citing</u> <u>McInnis</u>, 207 F.3d at 279-80).  The <u>McInnis</u> court also noted that "the threshold element of a prima facie showing of discrimination under the ADA is a showing that the plaintiff either is, or is regarded as being disabled.  Failure to establish an actual or perceived disability is thus fatal to a plaintiff's case." <u>McInnis</u>, 207 F.3d at 280.  Once the plaintiff establishes a prima facie case, the modified <u>McDonnell Douglas</u> burden-shifting approach is applied.  <u>Rachid</u>, 376 F.3d at 312.

In the instant case, Plaintiff easily meets his burden related

13

to steps two and three of establishing a prima facie case because A) there is no evidence indicating that Plaintiff was not qualified for the position, and B) Plaintiff suffered an adverse employment action (i.e., termination) on December 23, 2003.[48]   Defendant disputes, though, that Plaintiff can prove the first and fourth required elements.

Under step one, rather than claiming he was disabled, Plaintiff argues that he was a member of a protected class because he was *regarded as* disabled by Defendant within the meaning of 42 U.S.C. § 12102(2).[49]   Defendant disagrees and contends that Plaintiff was not regarded or perceived as disabled at any time.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see also Rodriguez, 436 F.3d at 474.   The person "regarded as" disabled is considered disabled under the ADA if he:

> (1) has an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . .; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

---

[48]   See Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, Ex. 3, p. 2.

[49]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, p. xvi.

14

Rodriguez, 436 F.3d at 475; see also Pegram v. Honeywell, Inc., 361 F.3d 272, 287 (5th Cir. 2004)(stating that an individual "was 'regarded as' disabled if the employer mistakenly believes that: (1) the individual has a physical impairment that is substantially limiting; or (2) an actual, but not-limiting impairment is substantially limiting.").

Plaintiff avers that, based on his December 20th e-mail, Defendant believed Plaintiff was disabled.[50]  Plaintiff admits, though, that he informed Segal and Rentz that "time off during the holidays, slow season" was the real reason for his leave request.[51] Defendant presents that admission as evidence that Defendant could not have perceived Plaintiff as disabled and also points out that Plaintiff admitted further in his deposition that he did not know what Defendant's perceptions were and that no one working with Defendant ever told Plaintiff he was perceived as disabled.[52]

The court agrees that these admissions by Plaintiff nullify his argument.  Once Plaintiff explained to Defendant that his request for leave was not "like a workman's comp type deal," but "was just time off during the holidays," Defendant could not have misinterpreted Plaintiff's e-mail as a request for an accommodation

---

[50]    See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, pp. xv-xvi.

[51]    Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, p. 145.

[52]    See id. at p. 164.

due to a disability.    Notably, Plaintiff testified that the discussion of his termination occurred only after he explained that the time off was not for medical reasons, an explanation that was provided just hours after Defendant became aware of the e-mail Plaintiff argues may have implied otherwise.[53]

While Plaintiff's ADA discrimination claims would fail on this basis alone, the court also finds that he cannot satisfy the fourth element of his initial burden.  Because Plaintiff does not claim to have been replaced by anyone, he must satisfy the final prong by offering evidence that he was treated less favorably than employees outside of his protected class.  Fifth Circuit jurisprudence typically requires a Plaintiff seeking to prove disparate treatment to point to a similarly situated employee who was outside of his protected class and was in "nearly identical" circumstances.  See, e.g., Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 1027 (2006)("To raise an inference of discrimination [under Title VII], the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals . . . ."); see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514 (5th Cir. 2001)("to establish disparate treatment [under Title VII] a plaintiff must show that the employer gave preferential treatment to another employee under 'nearly identical' circumstances."); Wyvill v.

---

[53]    See id. at pp. 145-146.

16

<u>United Cos. Life Ins. Co.</u>, 212 F.3d 296, 304 (5th Cir. 2000)("To establish a claim of disparate treatment [under the Age Discrimination in Employment Act, the plaintiff] must show that [the defendant] gave preferential treatment to a younger employee under 'nearly identical' circumstances.").[54]

Several decisions issued by the Fifth Circuit provide guidance for determining when two employees' circumstances are considered to be "nearly identical."  In general, the cases hold that employees with different supervisors, different responsibilities, different capabilities, different work rule violations, different disciplinary records, or different jobs are not considered "nearly identical."  <u>See</u>, <u>e.g.</u>, <u>Okoye</u>, 245 F.3d at 514-15; <u>Wyvill</u>, 212 F.3d at 305; <u>Little v. Republic Ref. Co.</u>, 924 F.2d 93, 97 (5th Cir. 1991); <u>Smith v. Wal-Mart Stores (No. 471)</u>, 891 F.2d 1177, 1180 (5th Cir. 1990); <u>Davin v. Delta Air Lines, Inc.</u>, 678 F.2d 567, 570-71 (5th Cir. Unit B 1982).

In the instant case, Plaintiff tries to designate Rentz and Segal as similarly situated employees in nearly identical circumstances and points out that Rentz admitted to receiving personal e-mail on his business account and Segal used Defendant's

---

[54]    Though the Fifth Circuit does not seem to have applied the "similarly situated / nearly identical" standard specifically within the context of disparate treatment under the ADA, neither party has given this court reason to believe a different standard would apply.

17

telephones to discuss business involving his other corporations.[55] Plaintiff further maintains that Rentz and Segal were treated differently than he was.[56]

The court does not find, though, that these assertions support Plaintiff's designation. First, Rentz admitted that he *received* personal e-mail, not that he was using his e-mail to run a side business.[57] Second, while Segal did testify that he used company telephones to discuss other corporations, Segal and Plaintiff did not share the same job, the same responsibilities, or the same supervisor.[58] Segal was the president and owner of the company and Rentz was a vice president and the general counsel; Plaintiff was a maintenance director under Segal's supervision.[59] Unlike Segal and Rentz, Plaintiff did not hold any position in the corporate executive structure of Defendant.[60] Based on this, the court cannot compare Plaintiff to either Segal or Rentz for purposes of determining disparate treatment.

---

[55]   See Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, pp. x; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, pp. viii-ix.

[56]   See id.

[57]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Rentz, pp. 21-22.

[58]   See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, pp. 4-7.

[59]   See Id. at Deposition of Segal, pp. 4, 12; Id. at Deposition of Rentz, p. 4.

[60]   Id. at Deposition of Segal, pp. 4-5, 9.

18

Therefore, because Plaintiff presents no evidence supporting the first and fourth elements required to establish a prima facie case of discrimination under the ADA, Plaintiff clearly cannot meet his initial burden, and Defendant's motion for summary judgment on this claim must be granted.

## C.   **ADA Retaliation**

The ADA also prohibits employers from retaliating against employees who oppose acts that are unlawful under the ADA and from interfering with the exercise of rights or protections granted by the ADA.  42 U.S.C. § 12203.

In order to establish a prima facie case of retaliation under the ADA, there must be 1) proof of a protected activity, 2) an adverse employment decision, and 3) a causal connection between the two.  Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999).  Once the prima facie case is established, the modified McDonnell Douglas burden-shifting approach is applied.  Rachid, 376 F.3d at 312; see also McInnis, 207 F.3d at 279.

Plaintiff argues that Defendant retaliated against him because he requested accommodations for his perceived disability.  As described above, it is undisputed that Plaintiff suffered an adverse employment decision and thus meets the second prong of the prima facie requirement.[61]  The court also finds sufficient evidence

---

[61]     Index of Exhibits to Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. A, p. 3.

exists to accept, only for purposes of establishing a prima facie case, that a causal connection may exist between Plaintiff's requested accommodation and his termination.

The Fifth Circuit has held that a short period of time between the protected activity and the alleged retaliation may provide the necessary causal connection for a prima facie case. Evans, 246 F.3d at 354 (finding "that a time lapse of five days in this case is sufficient to provide a 'causal connection' that . . . satisf[ies] the third prong of the prima facie case . . . ," and noting that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes."). The court has made clear that the causal connection requirement related to making a prima facie case "is much less stringent" than that related to a "but for" standard. Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001)(quoting Long v. Eastfield College, 88 F.3d 300, 305 (5th Cir. 1996)).

Here, Plaintiff argues that the proximity in time between the supposed request for accommodation made in the e-mail sent December 20, 2003, (the alleged "protected activity") and the termination on December 23, 2003, is sufficient to establish a causal connection that satisfies this prong of his prima facie burden. The court agrees. Although this evidence may not be sufficient to survive a "but for" test at trial, for purposes of summary judgment it does meet Plaintiff's burden related to the third element of proving his

prima facie case.

Despite Plaintiff meeting the second and third elements of establishing his initial burden, though, his ADA retaliation claim fails because, as the court found supra, Plaintiff's admission that his request for leave was "just time off during the holidays" precludes any finding that Defendant may have mistakenly believed Plaintiff suffered from a substantially limiting impairment. Therefore, Plaintiff cannot advance the argument that his requested accommodation qualified as a protected activity. Because, then, Plaintiff cannot prove the critical element of having engaged in a protected activity, he cannot meet his prima facie burden, and this claim, as a matter of law, cannot survive summary judgment.

Out of an abundance of caution, the court also notes that Plaintiff's ADA retaliation claim would continue to fail at later steps in the <u>Mcdonnell Douglas</u> analysis. Had Plaintiff carried his initial burden, the presumption created by that presentation would be eliminated by Defendant's legitimate, non-discriminatory explanation for Plaintiff's termination (i.e., improper use of company resources). The onus would then return to Plaintiff to prove either that his improper use of company resources was not the true reason Defendant terminated his employment, or that Plaintiff's protected activity was another "motivating factor" for the termination. <u>Rachid</u>, 376 F.3d at 312. Here, the latter standard applies. That is, because Plaintiff does not contest that

21

he misused Defendant's resources, he must present evidence that "but for" Defendant's illegitimate, discriminatory motivating factor, Plaintiff would not have been terminated. See id.

Here, Plaintiff only points to a proximity in time, and provides no additional evidence that a perceived disability was a motivating factor in the termination. As explained above, based on Plaintiff's admission, Defendant could not have regarded Plaintiff as having been disabled. Because there is no evidence in the record that would allow a reasonable jury to find Defendant ever perceived Plaintiff as disabled, logic dictates that such a misperception could not have possibly been a motivating factor for Plaintiff's discharge.

Even if Plaintiff was somehow able to carry his burden here, though, Defendant responds with sufficient evidence to show that he would have been terminated regardless of any alleged discriminatory animus. Defendant's evidence easily supports the position that Plaintiff would have been discharged for running a side business using company time and resources regardless of any perceived impairment.

The evidence indicates, and Plaintiff does not dispute, that he was warned in May 2003 against using company time and resources for any side ventures.[62] Additionally, Plaintiff testified that he

---

[62]     Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Rentz, pp. 25-26; see also Index of Exhibits to Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 81-82. The record is absent of any evidence

was aware such conduct would be a problem, and would even "be legitimate grounds for dismissal."[63] While Plaintiff testified that Defendant "certainly knew [about the side business] the rest of the year, and [Defendant] never said anything about my job performance," this does not imply that Defendant was aware of or approved of Plaintiff operating Lanta using Defendant's time and resources.[64] In fact, all evidence points to the contrary.

Plaintiff next complains that Segal and Rentz had not accessed Plaintiff's e-mail during previous absences, and argues that they may have been looking for a reason to terminate him by accessing his e-mail on December 22, 2003.[65] This allegation does not create a dispute over a material fact, though. The examples of previous absences cited by Plaintiff were planned vacations; the December 2003 absence is the only unscheduled absence anticipated to last for an indeterminate time. Therefore, Plaintiff's comparisons of this absence to others do not raise an issue of material fact related to Segal's testimony that this unexpected absence required

---

that would indicate Defendant was aware Plaintiff was using company time and resources for a side business anytime between the May 2003 meeting and the December 2003 discovery of e-mails that confirmed Plaintiff's violation.

[63]   Index of Exhibits to Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 81-82, 156.

[64]   See Plaintiff's Surreresponse [sic] to Defendant's Motion for Summary Judgment, Docket Entry No. 30, p. vi.

[65]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, p. vii.

23

Segal to step in and manage Plaintiff's department.[66]

Further, as discussed supra, Plaintiff's disparate treatment arguments find no support in the record.  Plaintiff offers no evidence of another, similarly situated employee conducting a side business on company time.[67]  His comparisons to Segal and Rentz are immaterial since the two executives cannot be considered to have been similarly situated or in nearly identical circumstances to Plaintiff.

Considering the foregoing, Plaintiff's ADA retaliation claim clearly fails to present a genuine issue of material fact at almost every level of the appropriate legal analysis.  Therefore, as a matter of law, Plaintiff cannot prevail.

**D.**    **FMLA Retaliation**

The FMLA entitles an eligible employee to a total of twelve weeks of leave each year for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D); Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves (a)

---

[66]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Rentz, p. 12.

[67]    In fact, in his deposition, Segal testified that Defendant terminated another employee, without warning, for similarly violating Defendant's internet policy.  See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 26, Deposition of Segal, p. 49.

impatient care in a hospital, hospice, or residential medical care facility, or (b) continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11).  Under some circumstances, the employer may have a duty to investigate an employee's leave request to determine if it qualifies for FMLA protection. See, e.g., Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980-981 (5th Cir. 1998).  Regarding notice and the follow-up investigation by the employer, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995).

The FMLA also prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the act and from discriminating or retaliating against an employee who exercises his FMLA rights or who opposes an act made unlawful by the FMLA.  29 U.S.C. § 2615(a); Richardson, 434 F.3d at 332; Satterfield at 975.  A plaintiff may be entitled to recovery if the employer retaliates against him for exercising his FMLA rights.  29 U.S.C. §§ 2615, 2617.

Similar to a retaliation claim under the ADA, a prima facie case of retaliation under the FMLA is composed of three elements: 1) proof of a protected activity, 2) an adverse employment decision, and 3) a causal connection between the two.  See Richardson, 434 F.3d at 332.  Once the plaintiff establishes a

25

prima facie case, the modified <u>McDonnell Douglas</u> burden-shifting approach is applied. <u>Rachid</u>, 376 F.3d at 312; <u>Richardson</u>, 434 F.3d at 327.

As explained, supra, related to Plaintiff's ADA retaliation claim, Plaintiff's instant case includes sufficient proof to meet the burdens attached with the second and third required elements. Also similarly to the ADA analysis, the court finds Plaintiff does not meet his burden required by the first prong.

By testifying that he informed Defendant that his leave request "was just time off during the holidays, slow season," Plaintiff acknowledged that such a request could not have been a protected activity.[68]  While the December 20th e-mail entitled "Paid Time Off - Medical" arguably may have put Defendant on notice that Plaintiff sought medical leave, Defendant investigated that request with a telephone call.[69]  Just as Plaintiff's explanation clarified any potential misconception Defendant may have inferred related to a disability under the ADA, his admission during the investigation that "it was just time off during the holidays" clearly extinguished any claim that Plaintiff reasonably apprised Defendant

---

[68]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, p. 145.  Plaintiff also seems to admit that he cannot satisfy the first required element of carrying his initial burden. He states in his motion for summary judgment, "Plaintiff concedes that, in this case, the first prong [of establishing a prima facie case of FMLA retaliation] does not apply."  Plaintiff's Motion for Summary Judgment, Docket Entry No. 25, p. viii.

[69]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, p. 145.

that his requested leave was due to a serious health condition.[70]

The court also notes that Plaintiff's own testimony conclusively established that he did not have a serious health condition. Plaintiff neither returned to the doctor following his first visit nor suffered from a reoccurrence of his symptoms following that visit.[71] He admitted that the decision to miss work was his own, and not ordered by his doctor.[72] Finally, Plaintiff testified that he was able to work at the time he requested leave.[73]

Because Plaintiff cannot prove the first critical element of a prima facie case, his claim of FMLA retaliation cannot survive summary judgment. Again, for the sake of caution, the court goes on to note that even if Plaintiff's claim was found to meet its prima facie burden, it would fail at later steps in the modified McDonnell Douglas analysis.

Assuming, arguendo, Plaintiff met his initial burden, Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination (i.e., improper use of company resources) would again dissolve the prima facie claim and shift the burden back to Plaintiff. See Rachid, 376 F.3d at 312. The analysis would then

---

[70]     Id.

[71]     Id. at Ex. B, Excerpts from Plaintiff's Deposition, pp. 119-24, 130-31.

[72]     Id. at 119-24, 130-31.

[73]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, p. 188.

continue as explained related to the ADA retaliation claim.

Because Plaintiff does not challenge Defendant's proffered reason for the termination, the court would again proceed under the "mixed-motives" framework. Plaintiff again points to the temporal proximity between the alleged notice for accommodation and his termination, and specifically references the December 22nd telephone conversation during which Segal and Rentz paused and said that they would get back with Plaintiff after he asked if he was going to be terminated for requesting leave for medical time. Plaintiff undermines his arguments, though, by admitting that earlier in the conversation he confirmed the "medical time" was not "a workman's comp type deal," but really "it was just time off during the holidays."[74] Logic again dictates that once Plaintiff admitted he did not have a serious health condition and was not requesting medical leave, Defendant could not have been motivated to terminate him based on any alleged request for FMLA leave.

Even if Plaintiff carried his burden here, though, Defendant's evidence again demonstrates that Plaintiff would have been terminated for running a side business using company time and resources regardless of his request for FMLA leave.[75]

Because Plaintiff's FMLA retaliation claim does not present any genuine issue of material fact that would allow a jury to find

---

[74]     Defendant's Motion for Summary Judgement, Docket Entry No. 24, Ex. B, Excerpts from Plaintiff's Deposition, pp. 145-146.

[75]     See the similar discussion, supra, under "C. ADA Retaliation."

it could survive at almost any stage of the modified <u>McDonnell Douglas</u> analysis, Defendant again meets its summary judgment burden, and Plaintiff's claim must fail.

### IV. Conclusion

Based on the above law and analysis, the court **DENIES** Plaintiff's summary judgment motion and **GRANTS** Defendant's motion for summary judgment motion.

**SIGNED** in Houston, Texas, this 25th day of August, 2006.

Nancy K. Johnson
United States Magistrate Judge

29